UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDREW PARRELLA,  :  Plaintiff, : | |
| : | |
| v.  : | Case No. 3:08-CV-1445 (PCD) |
| : | |
| LAWRENCE & MEMORIAL HOSPITAL, :  Defendant.  : | |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

Defendant Lawrence and Memorial Hospital moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss *pro se* Plaintiff Andrew Parrella's Complaint. For the reasons that follow, Defendant's Motion to Dismiss [Doc. No. 7] is **granted without prejudice.** Plaintiff is granted leave to amend his complaint on or before May 27, 2009 to attempt to state a viable claim.

**I.      Background**

Taking the allegations in the Complaint as true for purposes of the Motion to Dismiss, the facts are as follows. Plaintiff asserts claims pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, and the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12101, *et seq.* To draft his Complaint, Plaintiff completed the form entitled "Complaint for Employment Discrimination" available on the District of Connecticut website at http://www.ctd.uscourts.gov/. The following is the entirety of Plaintiff's response to item number six, which states, "The facts surrounding my claim of employment discrimination are as follows (Attach additional sheets, if necessary):"

> In sum, my employment with the Defendant was exemplary for roughly 20+ years. When it was discovered that I was bisexual, my employer began fabricating problems with my work product. Knowing that I had a validated medical problem with depression, the Defendant intentionally took actions to exacerbate my medical condition, and punished

>me for attending to prompt medical care.  I was fired because of my gender/sexual orientation.

Defendant has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint for failure to state a claim upon which relief may be granted, because Plaintiff has failed to plead facts sufficient to meet his burden of establishing a *prima facie* case of employment discrimination. [Doc. No. 7 at 1]  Specifically, Defendant contends that Plaintiff's Title VII claim must be dismissed because sexual orientation is not a protected class under the statute [Doc. No. 7-2 at 2-3], and that Plaintiff's ADA claim must be dismissed because "the complaint provides no facts from which it could be inferred that plaintiff is substantially limited in a major life activity, and that he is therefore within the class of disabled persons protected by the ADA." [Doc. No. 7-2 at 4]

**II.    Standard of Review**

The function of a motion to dismiss pursuant to Rule 12(b)(6) "is merely to assess the legal feasibility of the complaint, not to assay the weight of evidence that might be offered in support thereof." Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir. 1984) (citation omitted).  Therefore, when considering such a motion, the court must accept the facts alleged in the complaint as true, draw inferences therefrom in the light most favorable to the plaintiff, and construe the complaint liberally. Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001). In ruling on a motion under Rule 12(b)(6), the Court may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp, 482 F.3d 184, 191 (2d Cir. 2007).

The district court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) only if the plaintiff's factual allegations are not sufficient "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). The factual allegations made in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 1965. Although detailed factual allegations are not required, a plaintiff must provide the grounds of its entitlement to relief beyond mere "labels and conclusions." Id. at 1964-65; see also Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (declining to read Twombly's 'flexible plausibility standard' as relating only to antitrust cases). However, the Second Circuit has stated:

> When considering motions to dismiss a *pro se* complaint such as this, "courts must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted). This is especially true when dealing with *pro se* complaints alleging civil rights violations. See Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001).

Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 145-46 (2d Cir. 2002) (reversing district court's dismissal of *pro se* plaintiff's ADA claim on the basis that plaintiff had not alleged facts to show that plaintiff's condition substantially limited a major life activity sufficient to warrant protection under the ADA).

**III.   Discussion**

**A.   Title VII Claim**

Defendant moves for dismissal of Plaintiff's Title VII claim on the basis that sexual orientation is not a protected classification under the statute. Plaintiff, who states that he was retaliated against and terminated when his employer discovered that he is bisexual, argues that the spirit and intent of Title VII are such that it should include protection from employment

discrimination on the basis of sexual orientation.  However, the Second Circuit has concluded that "Title VII does not prohibit harassment or discrimination because of sexual orientation." Simonton v. Runyon, 232 F.3d 33, 35 (2d Cir. 2000).  "Title VII protects a limited class of persons from discrimination. Protection is limited to individuals who are discriminated [against] on the basis of 'race, color, religion, sex, or national origin.' 42 U.S.C. § 2000e-2(a)(1),(2). Sexual orientation is not included in the statutory protected class." Kiley v. ASPCA, 296 Fed. Appx. 107, 109 (2d Cir. 2008).

It is not entirely clear what Plaintiff means in stating that the basis of his termination was "gender/sexual orientation."  He may simply be using "gender orientation" and "sexual orientation" as synonyms.  It does not appear that he intends to assert sex or gender as a reason for his termination, independent of his sexual orientation.  His complaint offers no basis to suggest that he was fired because he is male, rather than because he is bisexual, nor does he claim as much in his opposition to the motion to dismiss.  Plaintiff may be arguing that sexual orientation discrimination is inherently a form of sex or gender discrimination.  Notwithstanding the potential merit of that argument as a general principle, the Second Circuit has already considered and rejected it with regard to Title VII specifically, in light of the statute's legislative history.  In summarizing Simonton v. Runyon, the Second Circuit in Kiley stated, "The Court noted that the legislative history was scant on whether sexual orientation should be included in the category of 'sex,' but the Court concluded, based on numerous bills attempting to extend Title VII protection to sexual orientation, that Congress did not intend to include sexual orientation in Title VII's current form." Kiley, 296 Fed. Appx. at 109 (citing Simonton, 232 F.3d at 35).

Unlike the twenty states that prohibit discrimination on the basis of sexual orientation, including Connecticut, Conn. Gen. Stat. § 46a-81c, Congress has failed to make discrimination on the basis of sexual orientation actionable under Title VII.  Therefore, Plaintiff's Title VII claim is dismissed.

**B.     ADA Claim**

Disability discrimination claims are analyzed under the three-step burden shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981), and St. Mary's Honor Center v. Hicks, 509 U.S. 502, 519, 524, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). See, e.g., Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 48 (2d Cir.), cert. denied, 537 U.S. 813, 123 S. Ct. 74, 154 L. Ed. 2d 16 (2002) (applying McDonnell Douglas to ADA claims). Under this standard, a plaintiff has the initial burden of a demonstrating a prima facie case of discrimination. Reg'l Econ. Cmty. Action Program, 294 F.3d at 49. The establishment of a prima facie case gives rise to a presumption of unlawful discrimination, and the burden of production shifts to the defendant.  If the defendant then proffers a "legitimate, nondiscriminatory reason" for the challenged employment action, Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91 (2d Cir. 2001), "the presumption of discrimination drops out," Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001), and the plaintiff must prove that the legitimate reasons offered by the defendant were "not its true reasons but were a pretext for discrimination." Id. (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). At all times, the ultimate burden of persuasion remains with the plaintiff to show that

the defendant intentionally discriminated against the plaintiff. Hicks, 509 U.S. at 507 (quoting Burdine, 450 U.S. at 256).

"To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) her employer is subject to the ADA; (2) she is disabled within the meaning of the ADA; (3) she is otherwise qualified to perform the essential functions of her job; and (4) she suffered an adverse employment action [including but not limited to termination] because of her disability." Alexander v. DiDomenico, 2009 U.S. App. LEXIS 9159, at *2 (2d Cir. Apr. 29, 2009) (citing Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004)).  "To establish a prima facie case of retaliation under the ADA, 'a plaintiff must establish that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action.'" Kemp v. Metro-North R.R., 2009 U.S. App. LEXIS 5892, at *3 (2d Cir. Mar. 19, 2009) (quoting Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999)).  Individuals with "a physical or mental impairment that substantially limits one or more of the major life activities of such individual" are disabled within the meaning of the ADA. Felix v. N.Y. City Transit Auth., 324 F.3d 102, 104 (2d Cir. 2003) (quoting 42 U.S.C. § 12102(2)(A)). A plaintiff is also "disabled" within the meaning of the ADA if he has a "record" of such an impairment, 42 U.S.C. § 12102(2)(B), or is "regarded as having such an impairment." 42 U.S.C. § 12102(2)(C). The determination of whether an individual is disabled under the ADA is made on an individualized, case-by-case basis. Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 151 (2d Cir. 1998).

The Supreme Court has set forth a three-part inquiry to determine whether a plaintiff is

disabled under subsection (A) of 42 U.S.C. § 12102(2). See Bragdon v. Abbott, 524 U.S. 624, 631, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998). First, a court must determine whether the plaintiff suffers from a physical or mental impairment. Id.; Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 641 (2d Cir. 1998). Second, the court must "identify the life activity" upon which the plaintiff relies and "determine whether it constitutes a major life activity under the ADA." Bragdon, 524 U.S. at 631. "Major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I); see also Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002) (major life activities are "those activities that are of central importance to daily life."). Third, the court inquires whether the impairment "substantially limited" a major life activity identified in step two. Id. "Substantially limited" means "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j) (2001). In determining whether an individual is substantially limited in a major life activity, a court considers the following factors: "[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." Id. §§ 1630.2(j)(2) (i)-(iii); see also Toyota Motor Mfg., 534 U.S. at 195-96.

Depression can qualify as a disability for purposes of the ADA. 29 C.F.R. § 1630.2(h) ("Physical or mental impairment means: … [a]ny mental or psychological disorder, such as …

emotional or mental illness…."). See also Oblas v. Am. Home Assur. Co., 199 F.3d 1323, 1999 WL 759026, at *2 (2d Cir. 1999) (citing Criado v. IBM Corp., 145 F.3d 437, 442 (1st Cir. 1998). Compare Colwell, 158 F.3d at 644 (where plaintiff only vaguely described his impairment, he "made no showing that his affliction is any worse than is suffered by a large portion of the nation's adult population"); MacGovern v. Hamilton Sunstrand Corp., 170 F. Supp. 2d 301, 310 (D. Conn. 2001) (plaintiff's depression did not substantially limit any major life activity where he could not work overtime but was otherwise generally able to work).

Defendant moves for dismissal of Plaintiff's ADA claim because "the complaint provides no facts from which it could be inferred that plaintiff is substantially limited in a major life activity, and that he is therefore within the class of disabled persons protected by the ADA." [Doc. No. 7-2 at 4]  Plaintiff's complaint states, "Knowing that I had a validated medical problem with depression, the Defendant intentionally took actions to exacerbate my medical condition, and punished me for attending to prompt medical care." [Doc. No. 1 at 3]  In his objection to the motion to dismiss, Plaintiff further states that he "suffers from depression - medical documentation provided states this." [Doc. No. 10 at 1]  Plaintiff may be referring to medical documentation previously provided to Defendant, because no such documentation was attached to the complaint or the objection to the motion to dismiss, but such factual substantiation is not required in order to oppose a motion to dismiss, because the only issue is the sufficiency of the pleadings.

Defendant states, "Countless people have had 'validated medical problems' such as depression, but not all of those people are disabled within the purview of this law." [Doc. No. 7-2 at 5]  However, as Defendant's statement implicitly concedes, some persons with depression

are indeed disabled within the meaning of the ADA, and whether Plaintiff is such an individual is a factual question. This issue is more commonly, and more properly, decided upon motion for summary judgment than on a motion to dismiss. Indeed, all of the cases that Defendant cites where the ADA claim was dismissed because the plaintiff failed to demonstrate a substantial limitation in a major life activity were at the summary judgment stage.

Defendant contends that Plaintiff's ADA claim must be dismissed because it "fails to set forth a prima facie case of disability discrimination" in that it "provides no facts from which it could be inferred that plaintiff is substantially limited in a major life activity, and that he is therefore within the class of disabled persons protected by the ADA." [Doc. No. 7-2 at 4] This argument disregards the fact that "[t]he prima facie case under McDonnell Douglas... is an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002).[1] "This Court has never indicated that the requirements for establishing a prima facie

---

[1] Contrary to the suggestion by some district courts that Twombly overruled Swierkiewicz, the Supreme Court in Twombly specifically stated that it was taking an approach consistent with its prior opinion in Swierkiewicz, noting that in Swierkiewicz, "[w]e reversed on the ground that the Court of Appeals had impermissibly applied what amounted to a heightened pleading requirement by insisting that Swierkiewicz allege 'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief. . . . Here, in contrast, we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1973-74. Compare Kamar v. Krolczyk, 2008 U.S. Dist. LEXIS 55975 (E.D. Cal. July 16, 2008) and Walker v. Woodford, 2007 U.S. Dist. LEXIS 60905 (S.D. Cal. Aug. 19, 2007) (both characterizing Twombly as overruling Swierkiewicz) with Rutter v. Picerne Dev. Corp., 2007 U.S. Dist. LEXIS 90690 (S.D. Tex. Dec. 10, 2007) (pointing out the above-quoted language in Twombly which preserves the primary holding of Swierkiewicz). See also Iqbal v. Hasty, 490 F.3d 143, 158 (2d Cir. 2007) (a post-Twombly case which continued to treat the relevant holding of Swierkiewicz as good law). Essentially, while Twombly rendered obsolete Swierkiewicz's reliance on Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), Swierkiewicz's rejection of a heightened pleading standard as applied to claims under McDonnell Douglas nonetheless remains valid.

case under McDonnell Douglas also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." Id. at 511. "Moreover, the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'" Id. at 512 (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577, 57 L. Ed. 2d 957, 98 S. Ct. 2943 (1978)).

      Contrary to Defendant's argument, a *pro se* Plaintiff's ADA claim is not necessarily properly dismissed merely for the failure to specify in the complaint the "major life activity" in which his depression causes him to be "substantially limited." The purpose of discovery and summary judgment are to flesh out the facts and, as appropriate, to rule out claims for which there is no factual support. Notice pleading requires only "a short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), in a manner that is sufficient to render the claim "plausible." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). The larger problem with Plaintiff's complaint, which Defendant does not squarely raise, is that Plaintiff's extremely concise complaint arguably fails to provide adequate notice as to what it is that Defendant allegedly did to Plaintiff that violated the ADA, given that Plaintiff attributes his termination to his sexual orientation, not to his disability. ("I was fired because of my gender/sexual orientation.") With respect to the ADA claim, which he asserted by checking the applicable box, he states only, "Knowing that I had a validated medical problem with depression, the Defendant intentionally took actions to exacerbate my medical condition, and punished me for attending to prompt medical care." This amounts to no more than a conclusory assertion that Defendant violated the ADA, and begs the questions: What actions? When? By whom? How was he punished? Rather than esoteric pleading requirements, these matters are fundamental to Plaintiff's providing

notice of his cause of action so that Defendant may understand the basic contours of the allegations against it and prepare a defense. In light of Plaintiff's *pro se* status, it may have been preferable for Defendant to move for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) ("A party may move for a more definite statement of a pleading which is so vague or ambiguous that the party cannot reasonably prepare a response.") See also Swierkiewicz, 534 U.S. at 514 ("If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding.") However, Defendant was entitled to instead move to dismiss. Having rejected the reason advanced by Defendant as a sufficient basis, standing alone, for dismissal pursuant to Rule 12(b)(6), but having identified other significant deficiencies in the complaint, the ADA claim is dismissed.

**IV.    Conclusion**

Defendant's Motion to Dismiss [Doc. No. 7] is **granted without prejudice.** Plaintiff is granted leave to amend his complaint on or before May 27, 2009 to attempt to state a viable claim. See FED. R. CIV. P. 15(a) (leave to amend a party's pleading "shall be freely given when justice so requires.")

SO ORDERED.

Dated at New Haven, Connecticut, this  5th  day of May, 2009.

                                                           /s/
                                                Peter C. Dorsey, U.S. District Judge
                                                United States District Court